IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF JAYDEN K. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JAYDEN K. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JOHN L., APPELLANT.

Filed February 5, 2019.    No. A-18-571.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Lauren J. Micek, Assistant Douglas County Public Defender, for appellant.

No appearance for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

John L. appeals the removal of three of his minor children from his home. Kristen L. cross-appealed from the juvenile court's order, but filed a motion to dismiss prior to the issuance of this opinion, which motion was granted. John contends that the juvenile court erred in (1) denying his right to procedural due process guaranteed by the 14th Amendment and (2) finding that removing the minor children from his home was in the minor children's best interests. For the reasons set forth herein, based upon our de novo review on the record, we affirm the order of the juvenile court.

- 1 -

STATEMENT OF FACTS

John and Kristen are the parents of six children who are involved in this juvenile case: Jayden K., born in June 2007; Ashlynn L., born in December 2008; Jordan L., born in November 2010; Briilynn L., born in December 2012; Jace L., born in July 2014; and Caselynn L., born in November 2015. They are also the parents of another child, Jaxtyn L., born in December 2016, who is not a State ward.

In October and December 2015, the court adjudicated the parties' five oldest children as children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015). Jayden was removed from his parents' home in September 2015. Ashlynn, Jordan, Briilynn, and Jace were removed from their parents' home in November 2016. A month later, Caselynn was removed from the parents' home and she was adjudicated in February 2017. See Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016).

Following an early review and permanency planning hearing in November 2017, Ashlynn, Briilynn, and Caselynn were placed back in their parents' home. The other children, with the exception of Jaxtyn, remained in out-of-home placement. By April 30, 2017, in connection with another review and permanency planning, the attorney for DHHS recommended that DHHS be relieved of responsibility for Ashlynn, Briilynn, and Caselynn. However, at the conclusion of the April 2018 hearing, the juvenile court stated:

I don't understand the vibe of this case. We have parents who are not really fully participating with things. They're not engaging in IFP services. They have to be coaxed down from the upstairs when the person walks into their home and finds kids outside playing unattended, which, apparently, led to a sexual assault by one child by the brother. The kids were unsupervised outside is what I understand. That's being investigated now. Any yet we're to take the parents word that, oh, they'll participate in this. They'll participate in that. They're not participating. And something really bad happened here, and I've said that. I'll say it again for the record. Something bad happened here. Our responsibility. And yet I seem to be the only one -- that's the vibe I get -- who's really pretty upset by this.

The permanency objective is one of guardianship with a concurrent objective of adoption for Jayden. It's guardianship or adoption for Jace and Jordyn. It's one of family preservation for Ashlynn, Briilynn, and Caselynn.

I'm going to allow the minor children to remain placed in the parental home with a safety plan in place within the next ten days that is approved by me personally. It will be presented to me. And I'll sign off on it or I won't, and, if I don't, those kids will be removed from the home.

The hearing on the safety plan check was held on May 10, 2018. The parties had agreed on a safety plan on May 7 and the plan was received into evidence as an exhibit. During the hearing, DHHS' attorney informed the court that DHHS was requesting the removal of Ashlynn, Briilynn, and Caselynn from the parents' home and was seeking to adduce evidence. When Kristen's attorney started to interject, the juvenile court stated "We can do it ex parte and sign an order today,

or you can have -- hear some evidence. Your call." Kristen's attorney stated "Okay. Let's have evidence." John's counsel did not object at the hearing.

The children's guardian ad litem testified that, the morning of the hearing, she dropped in on the parents. When she went up to the door, she observed a full bottle of liquid prescription medication on the ground and it appeared that the medication had been outside all night where the children could access it.

Antonia Olson, a family permanency specialist, testified that she has been assigned to this case since September 2016. On April 30, 2018, she went to Jordan and Jace's daycare where she observed that Jace's face was "all scratched up" and he had scratches on his shoulder. Jace told Olsen that "his dad did it." When Olsen attempted to talk to Jordan, he would not talk to her, he had his back to her, and he looked at the floor. She described Jordan's demeanor as "really scared." He finally told Olsen that "Mom told me I can't tell you." He then said "Mom said [Jace] fell off his slide, but I wasn't around . . . ." Olsen stated that she asked the foster mother to call the DHHS hotline and she also called the hotline. Olsen stated that there is an ongoing active investigation through Child Protective Services regarding the scrapes and injuries that Jace sustained.

Olson also testified that the May 4, 2018, safety plan provided that intensive family preservation (IFP) was supposed to occur 3 times per week in the family home. But since the parties agreed on the safety plan on May 4, Kristen cancelled a scheduled visit. Kristen told Olsen that she cancelled the visit because she was sick with an upper respiratory infection. Olsen further testified that the IFP worker informed her that Kristen did try to reschedule.

Olsen further testified that the other reason for seeking removal of the children is that the safety plan provided that the girls would participate in therapy for the sexual assault incident but Kristen rescheduled that appointment because she was sick. Finally, Olsen testified that the safety plan provided that children 8 years of age and younger were not to be alone outside but she expressed concern that the children were not being supervised. Olsen also expressed concern about domestic violence in the home and stated that the children have reported that the parents yell and hit each other and the children have to step between their parents. On cross-examination, Olson admitted that the visits were cancelled by Kristen, not John; however, she noted that John could have taken the children to the appointments but did not do so.

Olsen admitted that, at the time the safety plan was put into place on May 4, 2018, she was aware of the concerns about the intake regarding Jace, the allegations regarding the sexual assault of the girls, and the allegations of domestic violence between the parents. Olsen testified that she has concerns about whether John is able to parent the children because Kristen would take the children to day care instead of leaving them home alone with John. Additionally, the therapy reports and psychological evaluation with the parenting assessment stated that John should not be left alone with the children and that his visits should be supervised by an ongoing family support worker. Olsen further opined that it was in the children's best interests to be removed from the parental home.

At the conclusion of the hearing, the court stated:

[H]ere's the concern: You know, I don't require and I don't think any of us expect the parents to be perfect, but bad things are happening to these kids while they're with their parents. And I think the record reflects clearly what my thought was when I received that

recommendation a mere eight days ago to terminate jurisdiction with regard to the kids with the parents. It was wrong, wrongly brought, and it was denied for a reason.

There's domestic violence going on in the home. Now this child, Jace, gets injured while in the care of the parents on a visit. There's a video, apparently, of him falling on his face. That video doesn't tell me anything about whether or not that's how the child suffered injuries.

The investigation is ongoing. And what really concerns me, aside from the sloppiness of having medicine laying on the ground outside the home, is that apparently, the kids are being told don't tell what happened. And when that happens, that's not right, and these kids are in danger then. So they have to be removed from the home, and that will be the order of the Court.

## ASSIGNMENTS OF ERROR

John contends that the court erred in (1) denying his right to procedural due process guaranteed by the 14th Amendment and (2) finding that removing the minor children from his home was in the minor children's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Kane L. & Carter L.*, 299 Neb. 834, 910 N.W.2d 789 (2018). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

The determination of whether the procedures afforded to an individual comport with constitutional requirements for due process presents a question of law. *Id*.

## ANALYSIS

We first note that this appeal only governs Ashlynn, Briilynn, and Caselynn, and their removal from John's home. Ashlynn, Briilynn, and Caselynn had previously been removed from the home, adjudicated as children within the meaning of § 43-247(3)(a), returned to John's home, only to be removed again following concerns raised after the children were returned to John's home. Jayden, Jordan, and Jace were not returned to John's home and are not the subject of the appeal.

### DUE PROCESS

John argues that he was denied procedural due process in that, without prior notice, the court conducted an impromptu detention hearing and subsequently removed Ashlynn, Briilynn, and Caselynn from his home. We disagree.

As mentioned, Ashlynn, Briilynn, and Caselynn had previously been removed from John's home and were then adjudicated as children within the meaning of § 43-247(3)(a). Following the 2015 adjudication, the State worked with John in accordance with Neb. Rev. Stat. § 43-283.01 (Reissue 2016), to reunify this family. In November 2017, the court believed that Ashlynn, Briilynn, and Caselynn could be safely returned to John's home as the parties furthered the overall

- 4 -

reunification effort. Notwithstanding this progress, on April 30, 2018, in connection with an early review and permanency planning hearing, the court announced concerns it had with developments since the children were returned to the home. In connection therewith, the court noted a lack of supervision of the children which "apparently" led to a sexual assault by one child (which was the subject of a then current investigation) and John's lack of participation in family services. Although the court allowed the children to remain placed in the home for the time being, it did so subject to the following statement:

I'm going to allow the minor children to remain placed in the parental home with a safety plan in place within the next ten days that is approved by me personally. It will be presented to me. And I'll sign off on it or I won't, and, if I don't, those kids will be removed from the home.

Ten days later, on May 10, 2018, John attended the hearing required by the court to review the proposed safety plan. During the hearing, the DHHS attorney informed the court that it was requesting the removal of Ashlynn, Briilynn, and Caselynn from John's home. When Kristen's attorney started to interject to the request, the court stated: "We can do it ex parte and sign an order today, or you can have -- hear some evidence. Your call." Kristen's attorney stated "Okay. Let's have evidence." John's counsel did not object at the hearing. Following the evidentiary hearing, the court ordered that Ashlynn, Briilynn, and Caselynn again be removed from the parents' home.

Despite this colloquy and the evidentiary hearing, John asserts that he was denied procedural due process in connection with the removal of Ashlynn, Briilynn, and Caselynn from his home. Specifically, he argues that the State's impromptu motion to have the children removed at the safety plan hearing, followed by an immediate evidentiary hearing on the subject matter, was a denial of due process.

It is a correct statement of the law that following an endorsed summons or ex parte order of detention of a child, the State is required to give prompt notice to the affected juvenile's parent, guardian, custodian, or relative, and provide the juvenile's parent with a prompt and meaningful hearing in order to review the propriety of continued detention. *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), disapproved on other grounds, *O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). Once a juvenile is adjudged to be under subdivision (3), (4), or (8) of § 43-247, the court may make an order removing the children from his or her home upon a written determination that continuation in the home would be contrary to the health, welfare, or safety of such juvenile and that reasonable efforts to preserve and reunify the family have been made if required under § 43-283.01. See Neb. Rev. Stat. § 43-284 (Reissue 2016). Here, although the court allowed Ashlynn, Briilynn, and Caselynn to return to John's home in November 2017, following their adjudication under § 43-247(3)(a), the court subsequently noted concerns with the children's welfare stemming from lack of supervision and an apparent assault incident as of April 30, 2018, and ordered that a safety plan be instituted within 10 days, to be approved by the court, or that the court would again remove the children from the home. John attended the safety plan hearing on May 10 at which time the State requested that the children be removed. Accordingly, there is no question that John was on notice as of April 30, that the court was again considering removing the children from the home, which was within the court's authority under § 43-284, and that the May 10 hearing was being conducted to determine whether a safety plan could be implemented which

would adequately protect the welfare of the children or whether circumstances again warranted their removal from the home.

At the May 10, 2018, hearing, the State requested that the children be removed. When Kristen's counsel began to interject, the court gave her the option of removing the children immediately subject to a follow-up hearing, or proceeding with an immediate hearing on the issue of removal. Kristen's counsel opted to move forward with an evidentiary hearing. John did not object to proceeding with the hearing. At that hearing, in addition to the issue of assault previously discussed at the April 30 hearing, the State offered evidence of the parents' lack of supervision of the children, domestic abuse between the parents, physical injury to Jace's face and shoulder which Jordan reported his mother told him not to discuss with anyone, the presence of a bottle of prescription medication found outside the home, and testimony governing a lack of compliance with the proposed safety plan. Following the hearing, the court ordered the children to be removed from the home.

The record establishes that John was on notice that the issue of removal would be considered by the court at the May 10, 2018, hearing, at least in reference to the alleged assault involving their child, lack of supervision, and proposed safety plan. When the State requested that the children again be removed from John's home and additional allegations were raised at that hearing, John's counsel did not object to the hearing, object to the new allegations, or request a continuance of the hearing notwithstanding the court's invitation to do so. Further, although Kristen's counsel objected to the hearing, John did not do so. "If a defendant does not offer an objection and does not expressly adopt a codefendant's objection, the matter is not preserved for him or her on appeal." *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 934-35, 663 N.W.2d 43, 63 (2003).

John, who never objected to the hearing or moved for a continuance, now objects to the hearing on due process grounds in his brief on appeal. John was provided a prompt and meaningful hearing on the subject of the removal of his children from his home and waived any claim of inadequate notice or time to prepare in connection therewith. "One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error." *State v. Collins*, 281 Neb. 927, 951, 799 N.W.2d 693, 712 (2011). Having voluntarily chosen to move forward with the hearing without objection, John waived consideration of this alleged error on appeal.

BEST INTERESTS

John next argues that the court erred in removing his children from their home because it was not in the minor children's "best interests." Brief for appellant at 17. As we previously noted, once a juvenile is adjudged to be under subdivision (3), (4), or (8) of § 43-247, the court may make an order removing the children from his or her home upon a written determination that continuation in the home would be contrary to the health, welfare, or safety of such juvenile and that reasonable efforts to preserve and reunify the family have been made if required under § 43-283.01. See § 43-284. We interpret John's assignment of error to mean that the State did not prove, by a preponderance of the evidence, that continuation in his home would be contrary to the health, safety, or welfare of his children.

- 6 -

Here, the children had already been removed from the home, adjudicated as children within the meaning of § 43-247(3)(a), and then returned to the home in furtherance of a family reunification effort. Nevertheless, the court, following a hearing, determined that continuation in John's home was contrary to the children's health, safety, and welfare and that the children should again be removed from the home. Our review, then, is not whether there is clear and convincing evidence that removal was in the best interests of the children; rather, our review centers on whether the court, by a preponderance of the evidence, properly determined that removal was necessary for the health, safety, and welfare of the children.

Upon our de novo review of the record, based upon a preponderance of the evidence, we agree that removal of the children was necessary for the health, safety, and welfare of the children. In the short period of time in which the children were returned to the parents, there was significant evidence of the type of conduct which resulted in the children originally being adjudicated under § 43-247(3)(a). This evidence included lack of supervision of the children which may have led to an assault of their child, domestic abuse between the parents with the children acting as intermediaries, scratches to the face and shoulder of Jace with Jordan apparently being instructed by Kristen not to disclose its origin with some evidence that the injury was caused by John, evidence of Kristen not following through with the safety plan, evidence of prescription medication being carelessly left outside of the home, and evidence that it was unsafe to allow John to be left alone with the children. On this evidence, the court did not err in concluding that the children were in danger and, for their health, safety, and welfare, needed to be removed from the home.

## CONCLUSION

Having considered, and rejected, John's assigned errors, we affirm the juvenile court's order removing Ashlynn, Briilynn, and Caselynn from John's home.

AFFIRMED.